# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SONYA VIGIL and
LOREN VIGIL,

    Plaintiffs,

vs.   Civil No. 05-1142 WJ/ACT

SOUTH VALLEY ACADEMY,
ALAN MARKS, in his official and
individual capacity, and DANIEL
DOMINGUEZ, in his official and
individual capacity, KATARINA
SANDOVAL, in her official and
individual capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court pursuant to Defendants' Motion to Dismiss Plaintiffs' Tort and State Law Statutory Causes of Action (Doc. 13). Having reviewed the submissions of the parties and being fully advised on the law, I conclude the motion is well taken and shall be granted.

**BACKGROUND**

According to Plaintiffs' Complaint, Defendant South Valley Academy (SVA) is a municipal corporation under the laws of New Mexico. Defendant Allen Marks was the Head Teacher for SVA. Defendant Katarina Sandoval was the Co-Head Teacher for SVA, and Defendant Daniel Dominguez was the President of the Governing Council Board for the SVA. Plaintiff Sonya Vigil was an employee of Defendant South Valley Academy (SVA) working as the

Office Manager and began her employment on September 1, 2001.  She reported to Defendant Marks and Defendant Sandoval.  Plaintiff Loren Vigil was a member of the governing council for the SVA.  Plaintiffs' Complaint alleges ten causes of action arising from Sonya Vigil's employment with SVA and Loren Vigil's membership on the governing council.  The instant motion concerns only Plaintiffs' state law tort and statutory causes of action.  Count I is a claim by Sonya Vigil for prima facie tort.  Count VIII is a claim by both Plaintiffs for retaliatory discharge.  Count IX is a claim by Sonya Vigil for negligence.  Count X is a claim by Sonya Vigil for violation of the New Mexico Open Meetings Act.

**LEGAL STANDARD**

"A complaint should not be dismissed for failure to state a claim unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Curtis Ambulance of Florida, Inc. v Board of County Comm'n of the County of Shawnee, Kansas, 811 F.2d 1371, 1375 (10th Cir. 1987).  When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded allegations in the Complaint and construe them in the light most favorable to the plaintiff.  Tonkovich v. Kansas Bd. of Regents, University of Kansas, 254 F.3d 941, 943 (10th Cir. 2001).

A party may go beyond the allegations contained in the complaint and challenge the facts upon which jurisdiction depends.  Sizova v. National Institute of Standards & Technology, 282 F3d 1320, 1324-25 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  A Rule 12(b) motion to dismiss can challenge the substance of the complaint's jurisdictional allegation in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court.  Sizova, 282 F.3d at 1324-25; New Mexicans for Bill Richardson v. Gonzales,

64 F.3d 1495 (10th Cir. 1995).  A court has wide discretion to allow affidavits or other documents to resolve disputed jurisdictional facts under Rule 12(b).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. Sizova, 282 F.3d 1324-25; Holt, 46 F.3d at 1003.

**DISCUSSION**

I.    PLAINTIFFS' TORT LAW CLAIMS

Defendant contends that Plaintiffs' tort law claims in Counts I, VIII and IX are barred because the New Mexico Tort Claims Act has not waived the Defendants' immunity for any of these claims.  Plaintiffs argue that their claims in Count VIII for retaliatory discharge do not fall within the strictures of the New Mexico Tort Claims Act because the tort of retaliatory discharge is a provision of law governing the employer-employee relationship.  Plaintiffs further argue that their claim for negligence in Count IX should not be dismissed with regard to the individual Defendants because the New Mexico Tort Claims Act provides immunity only for public employees acting within the scope of duty, and these Defendants were acting outside the scope of their authority by committing intentional acts that violated Plaintiffs' rights.[1]  While Plaintiffs did not specifically argue that their claim of prima facie tort in Count I should also remain against the individual Defendants because of acts committed outside the scope of duty, the Defendants

---

[1]It should be noted that Plaintiffs' negligence claim does not allege any negligence by any of the individual Defendants but only alleges negligence on the part of SVA.  Assuming, however, that Plaintiff could allege negligence claims against the individual Defendants based on the general factual allegations in the Complaint, the Court will analyze whether the general allegations give rise to an inference that any individual was acting outside the scope of his or her duties as a public employee.

3

assumed that the Plaintiffs intended the argument to apply to the claim of prima facie tort, and the Court will also treat Plaintiffs' argument as having been made with respect to that claim.

      A.      <u>Plaintiffs' Claim in Count VIII for Retaliatory Discharge</u>

The New Mexico Tort Claims Act (NMTCA) provides:

> A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12 NMSA 1978. Waiver of this immunity shall be limited to and governed by the provisions of Sections 41-4-13 through 41-4-25 NMSA 1978, but the waiver of immunity provided in those sections does not waive immunity granted pursuant to the Governmental Immunity Act.

N.M. Stat. Ann. 1978 § 41-4-4(A). Plaintiffs do not argue that the New Mexico Religious Freedom Restoration Act waives immunity for their retaliatory discharge claim. Nor do they argue that there is any express waiver of immunity for their claim in Sections 41-4-5 through 41-4-12. Instead, they urge that immunity for a retaliatory discharge claim has been waived by Section 41-4-21 which states: "The provisions of the Tort Claims Act shall not affect the provisions of any personnel act, any rules or regulations issued thereunder or any other provision of law governing the employer-employee relationship."

As was explained in <u>Rubio v. Carlsbad Mun. Sch. Dist.</u>, 744 P.2d 919, 921 (N.M. App. 1987), Section 41-4-21 is not one of the sections specified within the NMTCA as one which provides any waiver of immunity. <u>See</u> N.M. Stat. Ann. 1978 § 41-4-4(A). This section provides only a limitation on and governing provision for the waivers provided in Sections 41-4-5 through 41-4-12. <u>See</u> <u>Id.</u> As such, it cannot furnish the basis for Plaintiffs' retaliatory discharge claims in Count VIII, and Defendants are entitled to dismissal of Count VIII as barred by the New Mexico Tort Claims Act.

B.  Plaintiffs' Claim in Count IX for Negligence and in Count I for Prima Facie Tort

As already noted, the NMTCA provides immunity, except as waived, to governmental entities and to public employees while acting within the scope of duty. See N.M. Stat. Ann. 1978 § 41-4-4(A). Plaintiffs concede that SVA is entitled to immunity for Plaintiffs' negligence and prima facie tort claims because there is no waiver of immunity for these claims in the NMTCA. However, Plaintiffs contend that the individual Defendants are not entitled to immunity for these claims because they were not acting within the scope of duty when they engaged in the wrongful conduct alleged in Plaintiffs' Complaint.

Under the NMTCA, "scope of duty" means "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." N.M. Stat. Ann. 1978 § 41-4-3(G). New Mexico courts have concluded that the "scope of duty" standard in the NMTCA is a departure from the common law "scope of employment" standard. Celaya v. Hall, 85 P.3d 239, 245 (N.M. 2004) (citing Risk Mgmt. Div. v. McBrayer, 14 P.3d 43, 46 (N.M. App. 2000)). The "scope of duty" extends beyond officially authorized or requested acts. Celaya, 85 P.3d at 245. The court in McBrayer noted that the NMTCA itself contemplates that an employee may engage in conduct within the scope of duty that is fraudulent or even committed with actual intentional malice. Id. at 47 (citing N.M. Stat. Ann. 1978 § 41-4-4(E)). Even a public employee's criminal conduct within the scope of duty falls within the waiver provisions of the NMTCA. Id. Acts committed in the scope of duty include acts that constitute an abuse of the employee's duties. Id. at 48. Thus, even when the specific act is not "requested, required or authorized" by the governmental entity, the conduct

5

falls within the "scope of duty" if it is engaged in while the employee is generally performing duties that are requested, required or authorized. Id. at 49.

In McBrayer, a governmental entity argued that its employee's criminal and intentional acts of raping and attempting to murder a university student could not have been within the employee's scope of duty. The court held that the employee's conduct would be within the scope of duty if the rape and attempted murder were committed while the employee was performing duties requested, required or authorized by the employer. In Celaya, the court concluded that an employee driving a department vehicle for a personal errand who ran over someone's foot would be acting in the scope of his duties if he was generally authorized to use the department vehicle and his personal errand was incidental to his authorized use. 85 P.3d at 245.

In order to determine whether the individual Defendants are entitled to a dismissal of Plaintiffs' claims, the Court must evaluate whether the Complaint alleges facts from which it may be inferred that the individual Defendants were acting outside the scope of their duties when engaging in the allegedly wrongful conduct.

>    1.  May An Inference Be Drawn that Defendant Marks Acted Outside the Scope of His Duties as a Public Employee When He Engaged in the Conduct Alleged in the Complaint?

In this case, Plaintiffs allege that Defendant Allen Marks was Plaintiff Sonya Vigil's supervisor and the Head Teacher at SVA, and that he engaged in the following wrongful conduct with regard to her:

1.  Promised to review her salary at the end of the year and increase her salary, but never reviewed her salary or gave her a salary increase;
2.  Promised Sonya Vigil the opportunity to attend school, but never provided the opportunity;

3. Subjected her to micro-management, harassment, intimidation, unsafe working conditions and retaliatory actions;
4. Never evaluated her in spite of rules and regulations mandating yearly evaluations;
5. Permitted her to be subjected to the threat of violence and intimidation by students by giving a lack of attention to safety needs of school staff;
6. Micro-managed and harassed her for being late while permitting other employees to arrive late repeatedly without any reprimands;
7. Failed to expel a student who assaulted her.
8. Met with the mother of the student who assaulted her and discussed an agreement to withdraw criminal charges without Ms. Vigil's knowledge or consent;
9. Mandated she withdraw criminal charges against the student who assaulted her;
10. Promised to hire a security guard then assigned the security duties to a maintenance worker with no security experience;
11. Left her to deal with a student who was irate, irrational and was threatening her and students;
12. Prohibited her from calling law enforcement when she was dealing with the irate, irrational, threatening student;
13. Reprimanded her for placing additional items on the agenda for the governing council at the request of a council member without receiving his approval first.
14. Informed her that there was no paid leave available to her even though the employee manual affords paid leave to an employee who is seriously ill.
15. Failed to pay her any paid leave for her serious illness even though she provided medical documentation of her illness and requested leave;
16. Represented that wages paid to her until February 15th were severance pay;
17. Requested that she attend a mediation/arbitration to negotiate her return to work.
18. Generally required Ms. Vigil to perform work outside the scope of her duties and, unlike any other employees, required her to work through the summer with only one week off and gave her no additional compensation for this work;
19. Permitted himself to be treated more favorably than her by working as an administrator without an administrator's license, evaluations, background check or fingerprint cards.

Even construing the allegations of Plaintiffs' complaint liberally in their favor, there is nothing from which it can be inferred that Defendant Marks' conduct fell outside the scope of his duties as Sonya Vigil's supervisor and as the Head Teacher of SVA. Assuming the truth of the allegations, he may have abused his authority by failing to review her salary, failing to evaluate her job performance, treating her less favorably than other employees, failing to provide a safe work environment, reprimanding her for performing her job, harassing her and interfering with her

ability to obtain paid leave.  However, all of this conduct would fall within the scope of the duties of a supervisor and head teacher, and nothing in the allegations of the Complaint even remotely infers otherwise.  Thus, Defendant Marks is entitled to dismissal of the claims against him by Sonya Vigil because his alleged conduct falls within the scope of his duty as a public employee, and the NMTCA has not waived his immunity for these claims.

     The Complaint alleges that Defendant Marks sat on SVA's governing council and that this was a conflict of interest because Defendant Marks was an SVA administrative employee and because Defendant Marks owned the land that was leased to SVA as the school grounds.  Plaintiffs allege that Loren Vigil was terminated from his position on the SVA governing council because he reported this conflict of interest as a violation of SVA policy and procedure.  However, these allegations all concern collateral conduct by Defendant Marks that was reported by Loren Vigil, and this conduct was not allegedly taken with regard to Loren Vigil.  Thus, these allegations do not give rise to a cause of action by Loren Vigil against Defendant Marks.  From the allegations in the Complaint, an inference can be drawn that Defendant Marks, as a member of the governing council, participated in any decision to terminate Loren Vigil's involvement with the governing council.  However, such participation in a decision of the governing council would fall within the scope of his duties as a member of the governing council, and none of the allegations of the Complaint would give rise to any reasonable inference that his participation fell outside the scope of those duties.  Accordingly, Defendant Marks is entitled to the dismissal of any claims Plaintiff Loren Vigil brings against him because his alleged conduct falls within the scope of his duties as a public employee and there is no waiver of immunity for this conduct.

>    2.   <u>May An Inference Be Drawn that Defendant Dominguez Acted Outside the Scope of His Duties as a Public Employee When He Engaged in the Conduct Alleged in the Complaint?</u>

Plaintiffs' Complaint alleges that Defendant Dominguez was the President of the governing council for the SVA. With respect to Plaintiff Sonya Vigil, the Complaint alleges that she reported Defendant Marks' misconduct to Defendant Dominguez, as president of the governing council, but that he took no investigative or remedial measures concerning the reports. The Complaint makes no other allegations concerning any individual conduct by Defendant Dominguez. This single allegation does not give rise to any inference that Defendant Dominguez engaged in conduct with no nexus to those duties he was requested, required or authorized to perform as President of the governing council. In fact, Plaintiff alleges that she reported the misconduct to him as the president of the governing council and, thus, his response to the report, whether in the form of malfeasance, misfeasance or nonfeasance, would also be as the president of the governing council. Accordingly, Defendant Dominguez was acting in the scope of duties when he engaged in the conduct, there is no waiver of immunity for Plaintiffs' tort claims against him for such conduct, and Defendant Dominguez is entitled to have Plaintiffs' tort claims against him dismissed.

>    3.   <u>May An Inference Be Drawn that Defendant Sandoval Acted Outside the Scope of Her Duties as a Public Employee When She Engaged in the Conduct Alleged in the Complaint?</u>

Plaintiffs allege that Defendant Sandoval was the co-Head Teacher and Sonya Vigil's supervisor. With respect to Sonya Vigil, Defendant Sandoval allegedly engaged in the following wrongful conduct:

1. Generally required Plaintiff to perform work outside the scope of her duties and, unlike any other employees, required her to work through the summer with only one week off and gave her no additional compensation for this work;
2. Subjected her to micro-management, harassment, intimidation, unsafe working conditions, and retaliatory actions;
3. Never evaluated her in spite of regulations mandating yearly evaluations;
4. Permitted herself to be treated more favorably than Plaintiff by working part-time while receiving full-time benefits and by teaching science when she was not certified to teach science and did not have a waiver to teach the subject.
5. Permitted Ms. Vigil to be subjected to the threat of violence and intimidation by students by giving a lack of attention to safety needs of school staff;
6. Promised to hire a security guard then assigned the security duties to a maintenance worker with no security experience;
7. Represented that wages paid to Ms. Vigil until February 15th were severance pay;
8. Submitted a letter falsely confirming Sonya Vigil's verbal resignation, requested that she return all school items to the school and requested that Ms. Vigil not return to the school grounds.

Even construing the allegations of Plaintiffs' complaint liberally in their favor, there is nothing from which it can be inferred that Defendant Sandoval's conduct fell outside the scope of her duties as Sonya Vigil's supervisor and as the co-Head Teacher of SVA. Assuming the truth of the allegations, she may have abused her authority by engaging in the above conduct, but all of the conduct would fall within the scope of her duties. Nothing in the allegations of the Complaint even remotely suggests otherwise. Thus, Defendant Sandoval is entitled to dismissal of the claims against her by Sonya Vigil because her alleged conduct falls within the scope of her duty as a public employee, and the NMTCA has not waived her immunity for these claims.

The Complaint alleges that Defendant Sandoval sat on SVA's governing council and that this was a conflict of interest because she was an SVA administrative employee. Plaintiffs allege that Loren Vigil was terminated from his position on the SVA governing council because he reported this conflict of interest. However, these allegations do not give rise to a cause of action

by Loren Vigil against Defendant Sandoval because they do not involve any action taken by Sandoval with regard to Mr. Vigil.

From the allegations in the Complaint, an inference can be drawn that Defendant Sandoval, as a member of the governing council, participated in any decision to terminate Loren Vigil's involvement with the governing council.  However, such participation in a decision of the governing council would fall within the scope of her duties as a member of the governing council, and none of the allegations of the Complaint would give rise to any reasonable inference that her participation fell outside the scope of those duties.  Accordingly, Defendant Sandoval is entitled to the dismissal of any claims Plaintiff Loren Vigil brings against her because her alleged conduct falls within the scope of her duties as a public employee and there is no waiver of immunity for this conduct.

II.   PLAINTIFFS' CLAIM UNDER THE NEW MEXICO OPEN MEETINGS ACT

The New Mexico Open Meetings Act (NMOMA), N.M. Stat. Ann. 1978 §§ 10-15-1 through 10-15-4, generally requires that all meetings of any policymaking body of any governmental agency be open, public meetings. N.M. Stat. Ann. 1978 § 10-15-1(B).  There are exceptions.  Meetings to discuss limited personnel matters including discussions of hiring, promotion, demotion, dismissal, assignment or resignation, or investigation of complaints against a public employee may be closed.  N.M. Stat. Ann. 1978 § 10-15-1(H)(2).  Final actions on personnel issues are not, however, excepted from the provisions of the NMOMA, and an aggrieved public employee is not precluded from demanding a public hearing.  Id.  Another exception to the NMOMA is meetings that are subject to the attorney-client privilege "pertaining to threatened or pending litigation in which the public body is or may become a participant."

N.M. Stat. Ann. 1978 § 10-15-1(H)(7).  Finally, the NMOMA provides that the discussion of personally identifiable information about an individual student is exempt from the NMOMA unless the student, parent or guardian requests an open meeting.  N.M. Stat. Ann. 1978 § 10-15-1(H)(4).

Individuals may apply for enforcement of the NMOMA through the courts, and the courts have jurisdiction to enforce the NMOMA by injunction, mandamus or other appropriate order, provided that the individual first provides written notice of the claimed violation to the public body and the public body has denied or not acted on the claim within fifteen days of receiving the notice.  N.M. Stat. Ann. 1978 § 10-15-3(B) and (C).

Plaintiffs' Complaint alleges that Defendant SVA violated the NMOMA because Sonya Vigil was not afforded an open meeting with regard to her resignation after she had specifically requested such a meeting.  Plaintiffs further allege that Ms. Vigil notified the governing council that an open meeting had not occurred concerning her resignation, and she was still not provided with an open meeting.  Plaintiffs allege that, at the same meeting at which Loren Vigil's resignation was requested, the governing council closed the meeting after receiving his resignation and reviewed Defendant Marks' evaluation.  Plaintiffs also allege that the governing council reviewed Sonya Vigil's resignation in a closed session.  Finally, Plaintiffs allege that the governing council often discussed identifiable information concerning students in open meetings.

Defendants' motion contends that Plaintiffs have failed to adequately allege a claim for a violation of the NMOMA because they do not allege that they gave notice of the violation to the public body.  In response, Plaintiffs provide an exhibit that they maintain constitutes the requisite notice required under the NMOMA.

Normally, the Court would not consider Plaintiffs' exhibit in ruling on a motion to dismiss. However, the plain language of the NMOMA makes clear that the notice requirement is a jurisdictional prerequisite to bringing an enforcement action into court. The purpose of the notice requirement is to give the public body fifteen days to either correct an alleged violation or deny that a violation has occurred. See N.M. Stat. Ann. 1978 § 10-15-3(B). Thus, the Court may look at matters outside the pleadings to determine the facts on which jurisdiction depends.

Plaintiffs' exhibit is a series of emails between Sonya Vigil and "Daniel" whose email address begins with "daniel_dominguez" and is on a ".com" service. Thus, it is apparently an email to Defendant Dominguez who was the president of the governing council for SVA. The first email was sent by Sonya Vigil to Defendant Dominguez and requests a meeting with the governing council to mediate or discuss her "issues regarding the working environment at SVA." She states her belief that the governing council has the responsibility to "address the personnel issues I have with Alan [Marks] and his operation of SVA." Ms. Vigil specifically requests a meeting open to the public. This is followed by a second email from Ms. Vigil to Defendant Dominguez in which she notes that she has been told that she cannot go directly to the council because staff are to work with Defendant Marks first. She then states that she has spent the entire year attempting to work on issues with Defendant Marks and has therefore requested an open meeting with the governing council. The last email was sent by Defendant Dominguez to Ms. Vigil and states that he will be back in town at a later date and will call Ms. Vigil at that time.

This series of emails makes no mention of any open meeting request related to Plaintiff Loren Vigil. Nor does it make any mention of any closed sessions to discuss Defendant Marks' evaluation, closed sessions to discuss Ms. Vigil's resignation or open sessions at which individual

13

students were discussed. Accordingly, there was no notice concerning these alleged violations and Plaintiffs may not bring claims against the SVA governing council for these alleged violations. While these emails do discuss Ms. Vigil's desire for an open meeting to discuss her personnel concerns, none of the emails is addressed to the governing council as a public body. An email sent to one member of a governmental body is not sufficient to give notice to the governmental body as an entity that a person is claiming a violation of the NMOMA. Moreover, Ms. Vigil's emails request an open meeting but make no mention that she considers the governing council to be in violation of the NMOMA. Thus, the governing council as a public body did not receive notice of a claimed violation such that it could have made an effort to act on or deny the claim. Accordingly, this Court does not have jurisdiction over Plaintiffs' claim under the NMOMA and this claim will be dismissed.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiffs' Tort and State Law Statutory Causes of Action (Doc. 14) is hereby GRANTED.

_____
UNITED STATES DISTRICT JUDGE