IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO
_____

SONYA VIGIL and
LOREN VIGIL,

      Plaintiffs,

vs.                                                                 Civil No. 05-1142 WJ/ACT

SOUTH VALLEY ACADEMY,
ALAN MARKS, in his official and
individual capacity, and DANIEL
DOMINGUEZ, in his official and
individual capacity, KATARINA
SANDOVAL, in her official and
individual capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court pursuant to Defendants' Motion for Summary

Judgment on Plaintiffs' Constitutional Claims, on Plaintiffs' Contract Claims, and for Qualified

Immunity (Doc. 14).  Having reviewed the submissions of the parties and being fully advised on

the law, I conclude the motion is well taken and will be granted.

**BACKGROUND**

Plaintiff Sonya Vigil was a contract employee with South Valley Academy (SVA) who

began working there as the Office Manager on September 1, 2001.  Plaintiff Loren Vigil was a

member of the governing council for the SVA.  Defendant Daniel Dominguez was the president

of the governing council for the SVA, Defendant Marks was the Head Teacher at SVA, and

Defendant Sandoval was the Co-Head Teacher at SVA. Defendant Marks and Sandoval were Sonya Vigil's supervisors and were also members of the governing council.

Plaintiff Sonya Vigil was employed at SVA under an express employment contract. The most recent contract was a one-year agreement that began July 1, 2003 and ended on June 30, 2004. The contract provides for sick leave and personal leave "in compliance with the South Valley Academy Faculty Handbook." Defendants' Motion Exhibit A ¶¶ 7,8.[1] The South Valley Academy Faculty Handbook for 2003-2004 provides accrual of paid personal and sick leave as well as unpaid Family and Medical Leave, but does not provide for paid disability leave. Defendants' Motion Exhibit B pp. 20-22. A 2001-2002 Faculty Handbook does provide for paid leave for short term disability when an employee has a serious health condition resulting in an inability to work and provides a certification of medical necessity from a physician. Plaintiffs' Exhibit 2 p. 17. However, Plaintiff Sonya Vigil asserts that she never received any "Faculty Handbook" and received only a "Student and Faculty Handbook." No "Student and Faculty Handbook" was offered for the record by either party.

Ms. Vigil's employment contract provided that, subject to the availability of funds, her salary was $33,000 per year, and that the school may, but is not required to, increase the salary if additional revenues are made available for the school year, subject to budgetary approval by the school and the State Department of Public Education. Defendants' Motion Exhibit A ¶¶ 8, 10.

---

[1]Unfortunately, Defendants began with the letter "A" for the exhibits attached to their Reply brief as well as their exhibits attached to their motion. Thus, the Court must specify whether it is referring to the exhibits attached to the motion or to the exhibits attached to the reply. For future reference, when submitting exhibits to me, I prefer the parties not use a letter or number more than once in a series of briefs that will be cross-referenced. Thus, the exhibits to the motion might be designated A through J, with the reply starting with exhibit K, and so on.

Plaintiffs contend that this contract provides for an annual review to determine if a salary increase is merited, but Plaintiffs cite to no specific provisions in the contract to support this, and the only provisions in the contract related to salary and salary increases are paragraphs eight and ten.

According to Ms. Vigil's affidavit, at the time she was hired, she was promised an opportunity to attend schooling and relied on this promise when she accepted the employment offer. While other employees were permitted to attend classes while working for SVA, Ms. Vigil was never permitted to do so. The other employees who were permitted to attend classes include Defendant Marks, Defendant Sandoval, an employee named Diane Oyen and another employee named Vivian Chavez.

Defendant Marks promised Ms. Vigil that he would review her salary at the end of the year and give her an increase at that time, and Ms. Vigil relied on this promise in deciding to accept the employment offer. Ms. Vigil's salary during her first year of employment, the 2001-2002 school year, was $30,000. Her salary for her third year, 2003-2004, was $33,000. Ms. Vigil attested that Defendant Marks did not give her an evaluation and she did not receive a pay raise after her first year of employment. Ms. Vigil contends that Defendant Marks first told her that she was not given a raise because of a budget shortfall. However, he later told her that he did not give her a raise because she lacked certifications. During the year there was an alleged budget shortfall, a special education teacher was hired for $45,000 in spite of a vote by the school counsel against paying this higher salary. With regard to Ms. Vigil's lack of certification, other employees without certifications were given raises.

During her employment, Ms. Vigil complained about safety concerns on the school grounds, inadequate security on the school grounds, and unsafe working conditions. She also

complained about preferential treatment of some employees that she believed was in violation of local, state and federal policies.  For instance, she complained that Defendant Sandoval was permitted to teach a science class even though Sandoval was not certified to teach science, that an employee named Alfred Martinez was employed without an employment contract, and that Defendant Marks was working as an administrator without a license or background check.

After Ms. Vigil began complaining about violations of policy and procedures, she was scrutinized, micro-managed and treated differently than other employees.  Ms. Vigil contends that she was treated differently by (1) not being given raises, (2) being forced to work the entire summer without additional compensation, (3) not being permitted to take paid medical leave,  (4) not being permitted to take classes, (4) not being permitted to come to work late without reprimand while others, including Defendant Marks, an employee named Jonathan, and an employee named Andrea Serrano-Garcia, were not reprimanded when they were late.

In 2002, Ms. Vigil and some teachers requested SVA to hire security guards and requested safety awareness and training.  Defendant Marks did not respond to this request and did not provide the school with any additional security.  On October 27, 2003, Ms. Vigil was assaulted by a student.  On October 31, 2003, Defendants Marks and Sandoval promised to hire a security guard.  However, a security guard was never hired, and the duty to provide security was given to a janitor with no security experience.  On December 14, 2003, Ms. Vigil was again forced to deal with an angry student with a knife.

During her employment, Defendant Marks directed Ms. Vigil to falsely report Defendant Sandoval's class load during the time Defendant Sandoval was teaching a science without certification.  After Plaintiff was attacked by a student on October 27, 2003, Mr. Marks made an

agreement with the student's mother without Ms. Vigil's knowledge or consent and requested that Ms. Vigil withdraw criminal charges brought against the student. Ms. Vigil felt this request was forceful. When Ms. Vigil was faced with an angry student with a knife on December 14, 2003, she was prohibited from immediately calling the police.

In January 2004, there was a dispute between Sonya Vigil and SVA. On January 22, 2004, Plaintiff requested six months of medical leave stating that her doctor had ordered her to not return to work for six months. Defendant Marks told Ms. Vigil that there was no form of paid leave available for her request and informed her that she would be paid through February 15, 2004 as severance pay. Other employees were permitted to take paid medical leave including Defendant Sandoval and an employee by the name of Andrea Serrano-Garcia. Ms. Vigil began a leave of absence on January 22, 2004.

Sometime before February 15, 2004, Defendant Marks requested that Ms. Vigil attend a mediation/arbitration to negotiate her return to work. Ms. Vigil canceled the first scheduled session because she did not feel emotionally or mentally stable enough to participate and because she was heavily medicated. Ms. Vigil attended the second scheduled session, but was still heavily medicated. She believed she was participating in an actual arbitration with the facilitator having final decision-making authority. The facilitator concluded that Ms. Vigil and Mr. Marks were unlikely to have their goals met by continuing a professional relationship. Relying on this as a formal decision, Ms. Vigil agreed to resign at some unspecified time in the future after certain specific conditions were met. Ms. Vigil states that this was not a formal resignation.

5

On February 15, 2004, SVA stopped paying Ms. Vigil's salary.  Ms. Vigil wrote a letter to the staff of SVA and provided this letter to the staff on February 18, 2004.[2]  The letter stated that it was written "to inform you that I will not be returning to SVA."  Defendants' Motion Exhibit C.  Ms. Vigil further stated, "This has been a painful decision I and my family had to make . . .."  Id.  The letter then described Ms. Vigil's health problems and attributed them to her job at SVA and to Defendant Marks in particular.  The letter stated Ms. Vigil's belief that Defendant Marks had lied to the governing council, and iterated several of Ms. Vigil's other concerns regarding certification of teachers and a lack of support from the administration.  Ms. Vigil stated, "SVA will hire someone to replace me so I can train them as quickly as possible.  At that point, my contract will be terminated."  Id.  Plaintiff did not intend this letter as a formal resignation.  She merely intended to inform fellow staff of the outcome of the arbitration and her plan to resign at some unspecified time in the future.

On February 20, 2004, Defendant Sandoval wrote Ms. Vigil an email advising her that Defendant Marks had accepted her verbal resignation on February 13, 2004.  The email advised Ms. Vigil to return any school property and advised her not to return to the school campus.  On February 26, 2004, Ms. Vigil responded to the email with a letter advising Defendant Sandoval and Defendant Marks that she had not verbally resigned during the arbitration and asked that this be verified with the facilitator.  She also questioned how the pay she received while on medical

---

[2]Defendants offer this letter as Motion Exhibit C.  The letter is typewritten but contains a handwritten date of "2/15" at the top.  Defendants contend that this letter was provided to SVA on February 15, 2004 based on the handwritten date.  Plaintiffs contend that the letter was delivered on February 18, and that Defendant Marks added the handwritten date to the letter. Because there is a dispute as to the date of the letter, the Court will presume Plaintiffs' version of the facts for purposes of this motion.

leave since January 22, 2004 could be considered severance pay.  She stated her belief that, if SVA did not continue to pay her, SVA would be firing her.  Ms. Vigil provided the facilitator with a copy of the letter, and the facilitator added her comment to the letter that Ms. Vigil had not verbally resigned during the arbitration.

On February 27, 2004, Defendant Sandoval sent another email to Plaintiff reaffirming that "the school understands that you have resigned."  Plaintiffs' Exhibit 7.  The email also stated that medical leave is not paid leave and that Defendant Sandoval would serve as the channel for any further communications between Ms. Vigil and the school.  On March 1, Ms. Vigil sent a reply to Defendant Sandoval's email reiterating that she had not resigned, and stating that if SVA had not confirmed this with the facilitator, SVA had technically fired her without just cause.  She then wrote that she could not find a section in the staff handbook that stated that sick leave is not paid.  Finally, she requested something in writing indicating she could not call the school to speak with friends and colleagues.  Defendant Sandoval replied back on the same date stating that Ms. Vigil had provided two letters of resignation within several months, that the school had negotiated Ms. Vigil's continued employment after the first letter of resignation in the fall of 2003,[3] but that she had never complied with the terms reached during that negotiation, that Ms. Vigil had again resigned in January by sending a letter to the staff stating that she would not return to SVA to work, had gone on sick leave but had confirmed her desire to leave her employment, had then negotiated terms for her resignation during the mediation, and that the written report from the facilitator made clear that Ms. Vigil had submitted her resignation effective immediately.

---

[3]Defendants' Motion Exhibit D confirms that Ms. Vigil resigned in October 2003.

On March 1, 2004, Ms. Vigil sent a communication to the facilitator to clarify what had occurred during arbitration. On March 4, 2004, the facilitator agreed with Ms. Vigil that Ms. Vigil had agreed to resign in a manner that would ensure SVA would not be harmed by her departure in that she would maintain her employment long enough to train her replacement and would write a manual on how to be the office manager. She also agreed that she had not heard Ms. Vigil verbally resign during the arbitration.

Plaintiff maintains during this litigation that she never resigned from her employment but was terminated. After Ms. Vigil's employment with SVA ended, she was not afforded an opportunity to be heard on the issue of the end of her employment. She requested an opportunity to air various concerns to the governing council, but these concerns did not include her "termination." Plaintiffs' Exhibit 11; Plaintiffs' Exhibit A to Doc. 18. She was not given an opportunity to address the governing council.

On March 6, 2004, Defendant Dominguez sent an email to Plaintiff Loren Vigil and requested that he resign from the governing council due to the "legal implications involved with the actions Sonya is taking or has let us know she is contemplating." Plaintiffs' Exhibit 12. On March 7, 2004, Mr. Vigil replied to the email and stated that he could not offer his willing resignation from the governing council. Id. At a governing council meeting on March 9, 2004, the members voted to remove Mr. Vigil from the governing council.

Plaintiffs' Complaint alleges ten causes of action arising from Sonya Vigil's employment with SVA and Loren Vigil's membership on the governing council. By Memorandum Opinion and Order filed September 25, 2006 (Doc. 26), I dismissed Plaintiffs' state tort and statutory causes of action in Counts I, VIII, IX, and X. Plaintiffs' remaining claims include a claim by

Sonya Vigil against SVA for breach of contract in Count II, a claim by Sonya Vigil against SVA for breach of the implied covenant of good faith and fair dealing in Count III, a claim by Sonya Vigil against all Defendants under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment in Count IV, a claim by Sonya Vigil against all Defendants under 42 U.S.C. § 1983 for violation of her right to freedom of speech in Count V, a claim by Sonya Vigil against all Defendants under 42 U.S.C. § 1983 for violation of her due process rights in Count VI, and a claim by both Plaintiffs against all Defendants under 42 U.S.C. § 1983 for violation of their right to freedom of association in Count VII.

In the instant motion, Defendants contend that the individual Defendants are entitled to qualified immunity on Plaintiffs' constitutional claims in Counts IV, V, VI and VII. They also argue that all Defendants are entitled to summary judgment on all of Plaintiffs claims.

**LEGAL STANDARD**

The defense of qualified immunity is designed to shield public officials from erroneous suits as well as liability and protects all but the plainly incompetent or those who knowingly violate the law. Holland v Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001); Hinton v City of Elwood, Kansas, 997 F.2d 774, 779 (10th Cir. 1993). For this reason, special standards apply to a summary judgment motion raising the defense of qualified immunity. Hinton, 997 F.2d at 779. When a defendant asserts a qualified immunity defense, Plaintiff bears the initial burden of making two showings. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001); Holland, 268 F.3d at 1185. First, a plaintiff must show that a defendant's alleged actions violated a constitutional or statutory right. Medina, 252 F.3d at 1128. The Court, in determining whether this showing is made, must assess whether the facts, taken in the light most favorable to the plaintiff, show that

the defendant's conduct violated a constitutional or statutory right.  Holland, 268 F.3d at 1185.  If a favorable view of the alleged facts shows the violation of a constitutional or statutory right, the plaintiff must then show that the right was clearly established at the time the allegedly wrongful conduct occurred.  Id. at 1186.  If a plaintiff makes the required showings, the burden then shifts back to the defendant to make the usual showing required of defendants moving for summary judgment.  Hinton, 997 F.2d at 779.

Under the usual summary judgment standard, the burden of showing an absence of a genuine issue of material fact falls upon the moving party.  See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671.  The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant.  Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  In ruling on a motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Sierra Club v. El Paso Gold Mines, Inc., 421 F.3d 1133, 1150 (10th Cir. 2005).  In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party.  Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000).

**DISCUSSION**

I.      TIMING OF THE MOTION AND DISCOVERY

At several junctures of Plaintiffs argument they contend that Defendants' instant motion is premature because Plaintiffs have not had sufficient discovery to obtain the evidence necessary to fully support their claims.  Plaintiffs argue that they would be able to better support their claims if given more discovery.

Under Fed. R. Civ. P. 56(b), a party against whom a claim is asserted may, at any time, move for summary judgment.  Under Fed. R. Civ. P. 56(f), if a party opposing summary judgment cannot, for reasons stated,  present facts to justify the party's opposition, the court may deny summary judgment or order a continuance to permit discovery.  A party seeking to defer a ruling on summary judgment under Rule 56(f) must file an affidavit that "explain[s] why facts precluding summary judgment cannot be presented.  This includes identifying the probable facts not available and what steps have been taken to obtain these facts."  Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992) (citation omitted).  "[T]he nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact."  Id.

Plaintiffs' generalized argument that they should have more discovery before being required to respond to Defendants' motion for summary judgment does not meet the requirements of Rule 56 (f).  They have not explained with any detail why evidence cannot be presented, the evidence they would obtain with more discovery and how additional time will enable them to rebut Defendants' version of the facts.  What little explanation Plaintiffs give is in the form of argument by counsel rather than by affidavit as required under Fed. R. Civ. P. 56(f).  For these

reasons, I conclude that Defendants' motion is not premature and will proceed to rule on the motion.

## II.     RESIGNATION VERSUS TERMINATION

Many of Plaintiff Sonya Vigil's claims depend on her contention that her employment was terminated. Central to Defendants' argument for summary judgment on many of these claims is their assertion that Ms. Vigil resigned. Thus, a determination of this issue at the outset will simplify much of the analysis of individual claims.

If there were conflicting evidence on this issue, this would be a disputed issue of fact, and it would be inappropriate for the Court to determine the issue at summary judgment. However, there is no conflicting evidence from which a jury could reasonably find that Ms. Vigil was terminated.

Defendants present a letter from Ms. Vigil in which she announces that she is not returning to work at SVA. Ms. Vigil does not dispute that she wrote this letter. Her only evidence that this was not a letter of resignation is her affidavit testimony that she did not intend it as a letter of resignation. The letter is objectively clear in announcing that Ms. Vigil will no longer work at SVA and her subjective intent in circulating the letter is not relevant.

Defendants also contend that Ms. Vigil agreed to resign during a mediation before she submitted the letter. Ms. Vigil does not dispute that she agreed to resign during mediation, but urges that this was not in itself a resignation because she agreed to resign at some unspecified future time after "certain conditions" were met. As shown in Plaintiffs' Exhibit 10, Ms. Vigil stated during mediation that she needed to leave her job for her health which had been negatively affected by working conditions at SVA. However, she agreed to train her replacement and write

12

a manual on her job duties before leaving her job in order to provide a smooth transition and minimize the impact on SVA from her departure. These were offers or promises made by Ms. Vigil for the benefit of SVA, and she received no benefit or consideration for them. They were not "conditions" to Ms. Vigil's resignation such that SVA was precluded from accepting her resignation unless and until these events occurred. Thus, SVA was under no obligation to accept Ms. Vigil's offer to train her replacement and write a manual, and SVA was free to accept Ms. Vigil's resignation. Accordingly, Ms. Vigil was not terminated from her employment with SVA because she voluntarily resigned.

III.   QUALIFIED IMMUNITY

A.   <u>Equal Protection Claim in Count IV</u>

According to Plaintiffs' response to the motion for summary judgment, Plaintiff Sonya Vigil brings her equal protection claim under a "class of one" theory. The United States Supreme Court has recognized equal protection claims under a class of one theory based on allegations that a state has intentionally treated an individual differently from others similarly situated with no rational basis for the differential treatment. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562. 564 (2000). In order to succeed on such a claim, a plaintiff must prove she was "singled out for persecution due to some animosity, meaning that the actions of [the Defendants] were a spiteful effort to get [her] for reasons wholly unrelated to any legitimate state activity." <u>Mimics, Inc. v. Village of Angel Fire</u>, 394 F.3d 836, 849 (10th Cir. 2004). In addition, she must prove that she was treated differently than those similarly situated. <u>Id.</u>

Defendants urge that Ms. Vigil cannot show a constitutional violation because she was not terminated from her employment and because she cannot show any similarly situated employee

who was treated more favorably than she.  The Court has already determined that Ms. Vigil was not terminated, but, from the evidence offered it appears that Ms. Vigil's equal protection claim rests on differential treatment beyond her alleged termination.  Accordingly, the Court will address whether Ms. Vigil was treated less favorably than similarly situated employees.

In Ms. Vigil's affidavit, she identifies Defendant Marks, Defendant Sandoval and Diane Oyen as similarly situated employees who were allowed to attend classes while she was not.  She identifies Defendant Marks, Jonathan and Andrea Serrano-Garcia as similarly situated employees who were not reprimanded when they came late to work while she was reprimanded for coming in late.  She identifies Defendant Sandoval and Andrea Serrano-Garcia as similarly situated employees who were permitted to take paid medical leave while she was not.  She avers that she was treated differently than other unidentified similarly situated employees by not being given raises and being forced to work the entire summer without additional compensation.  Finally, she states that Defendant Sandoval received preferential treatment by being allowed to teach science without certification, that Defendant Marks received preferential treatment by working as an administrator without a license or background check, and Alfred Martinez received preferential treatment by being permitted to work without an employment contract.

A similarly situated employee is one who "deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline."  Green v. New Mexico, 420 F.3d 1189, 1194 (10th Cir. 2005).  Defendants Marks and Sandoval are obviously not similarly situated to Ms. Vigil because they are her supervisors so they do not deal with the same supervisor as Ms. Vigil.  With regard to the other named and unnamed employees, Ms. Vigil provides no evidence that any of them deal with the same supervisor and are subject to the same

standards governing performance evaluation and discipline.  She provides no information regarding the specific job duties of these other employees or the standards of performance required of them compared to the standards of performance required of her.  In the response brief, Ms. Vigil's counsel makes the conclusory statement that each of the employees is supervised by Defendant Marks and each is subject to the same standards governing performance and discipline, but argument of counsel is not evidence and conclusory statements do not show a disputed issue of material fact sufficient to defeat a motion for summary judgment.  Annett v. University of Kansas, 371 F.3d 1233, 1237 (10th Cir. 2004) (unsupported conclusory allegations do not create a genuine issue of fact).

Because Plaintiffs have failed to show that Ms. Vigil was treated differently than any similarly situated employee, she has failed to show a violation of her equal protection rights, and the individual Defendants are entitled to summary judgment on this claim.  Additionally, because the individual Defendants' assertion of qualified immunity is based on a Plaintiffs' failure to show a constitutional violation, it is appropriate to grant summary judgment to SVA without further analysis.  See Jiron v. City of Lakewood, 392 F.3d 410, 419 n.8 (10th Cir. 2004) (When a finding of qualified immunity for individual defendants is based on a conclusion that the individuals did not commit a constitutional violation, this finding precludes liability on the part of the governmental entity.).

B.      Free Speech

Defendants assert that Ms. Vigil's claim of free speech is based on an assertion that she was terminated in retaliation for speaking out on matters of public concern, and, because she resigned, her claim fails.  Ms. Vigil's response indicates that her claim is based on retaliation in the form of "harassment, intimidation, and a false reprimand all leading up to her eventual termination."  Plaintiffs' Response p. 18.  Based on these arguments, the Court need not analyze the first two Pickering factors but need only determine whether her alleged speech was a substantial motivating factor behind her employer's decision to take an adverse action against her.  Baca v. Sklar, 398 F.3d 1210, 1218 (10th Cir. 2005).  Under this third factor, a plaintiff bears the burden of establishing an adverse employment action.  Maestas v. Segura, 416 F.3d 1182, 1188 n.5 (10th Cir. 2005).  While the Tenth Circuit has held that some forms of retaliation that might not support a Title VII claim may be sufficient to support a First Amendment retaliation claim, id., a plaintiff must still produce some evidence of adverse employment action.  Ms. Vigil produced no such evidence.

Ms. Vigil asserts that she suffered harassment and intimidation.  She contends that she was scrutinized and micro-managed, but provides no detail or evidence with regard to these assertions.  The only evidence she offers of harassment or intimidation is her affidavit in which she testified about various alleged breaches of her employment contract, being treated less favorably than other employees, an assault by a student, being faced with a second angry student, and failure by her employer to provide safe working conditions.  These actions simply do not amount to harassment and are not sufficient to present an actual or potential danger that the speech of an employee of normal sensibilities and firmness will be chilled.  See Keirsey v. Diamond, No.

96-5155, 1998 WL 208860 (10th Cir. April 29, 1998) (unpublished) (citing Morfin v. Albuquerque Pub. Schs., 906 F.2d 1434, 1437 n. 3 (10th Cir.1990)).

Ms. Vigil also asserts that she was reprimanded for coming to work late.  Her evidence of this alleged reprimand is her affidavit testimony that she received a reprimand.  A reprimand can be an adverse employment action.  A formal reprimand can certainly be an adverse employment action for purposes of a First Amendment claim.  Schuler v. City of Boulder, 189 F.3d 1304, 1310 (10th Cir.1999).  However, Ms. Vigil's affidavit does not describe the nature of the reprimand she received for coming to work late - was it a verbal comment from a supervisor warning her not to be late to work, or was it a formal, written reprimand that became part of her personnel file?  While a formal reprimand may be an adverse employment action, a verbal comment or unofficial warning would not be sufficient to chill speech and would not support Ms. Vigil's claim.  Without any evidence regarding the nature of the reprimand, Ms. Vigil has failed to meet her burden of showing an adverse employment action with regard to a reprimand.

Ms. Vigil also argues that her "differential treatment" started when she began to report policy and procedure violations.  As noted above, Plaintiffs have failed to establish that Ms. Vigil was treated less favorably than any similarly situated employee.  Thus, there is no differential treatment that would be an adverse employment action for purposes of her First Amendment claim.

Plaintiffs have failed to show any adverse employment action for purposes of Ms. Vigil's First Amendment claim, so they have not shown the violation of a constitutional right.  Accordingly, the individual Defendants are entitled to qualified immunity, and, with no violation of a constitutional right, SVA is entitled to summary judgment.

C.     Procedural Due Process

The essence of Ms. Vigil's procedural due process claim is her contention that she did not receive adequate notice and opportunity to be heard with regard to her termination.  Defendants argue that Ms. Vigil's procedural due process claim must fail because she resigned and was not terminated.  The Court has already determined that no reasonable jury could find, based on the evidence in this case, that Ms. Vigil's employment was terminated.  Accordingly, she was not deprived of any property interest and has no procedural due process claim.  The individual Defendants are entitled to qualified immunity because Ms. Vigil has failed to show the violation of a constitutional right, and SVA is also entitled to summary judgment.

D.     Freedom of Association

Plaintiffs' Complaint alleges that both Loren Vigil and Sonya Vigil were dismissed for their political associations and because of their marital association with one another.  Defendants' motion argues that the claim with regard to Sonya Vigil must fail because she resigned and was not terminated.  With regard to Loren Vigil, Defendants urge the claim must fail because there is no evidence that the Defendants had a specific intent to deprive Mr. Vigil of his marital relationship.  Plaintiffs respond that the claim is based on political association, and that Loren Vigil was dismissed because he spoke out about various issues which were based on his political beliefs and that he and Sonya shared the same political beliefs and were dismissed for associating with one another based on political beliefs.

Defendants, in replying to Plaintiffs' argument, were somewhat hobbled by Plaintiffs' conflation of a marital relationship claim, a political association claim and a free speech claim.  However, Defendants argue that Mr. Vigil has not made met his burden of showing a disputed

18

issue of material fact with regard to a free association claim whether it is a political or marital association claim.  Defendants further argue that Mr. Vigil did not allege a claim based on retaliation for protected speech.

This Court has already concluded that Ms. Vigil resigned and was not terminated from her employment.  Her Freedom of Association claim is based entirely on her alleged termination. Accordingly, Ms. Vigil's claim in Count VII must fail and all Defendants are entitled to summary judgment on Ms. Vigil's claim because she has failed to show the violation of a constitutional right.

With regard to Mr. Vigil's claim, a marital association claim requires an allegation and proof that the Defendants had a specific intent to interfere with a particular relationship.  Trujillo v. Bd. of County Comm'rs, 768 F.2d 1186, 1190 (10th Cir. 1985); Torres v. Pueblo Bd. of County Comm'rs, No. 98-1412, 2000 WL 1346347 (10th Cir. Sept. 19, 2000) (unpublished opinion).  In this case, Plaintiffs have offered no evidence that creates a genuine issue of material fact that any of the Defendants had a specific intent to interfere with Mr. and Ms. Vigil's marriage when removing Mr. Vigil from the governing council.  Accordingly, the individual Defendants are entitled to summary judgment on Mr. Vigil's claim to the extent it is brought as a marital association claim because he has failed to allege and offer evidence of a violation of a constitutional right.  Because the basis for the individual Defendants' qualified immunity is Mr. Vigil's failure to show the violation of a constitutional right, all Defendants are entitled to summary judgment on Mr. Vigil's marital association claim.

In Adler v. Pitaki, the Second Circuit concluded that a former state employee who alleged he was fired because his wife brought a lawsuit against the state could maintain an action against

the state for violation of his First Amendment right of free association.  185 F.3d 35, 44 (2nd Cir. 1999).  The court began its analysis by noting that, while the Supreme Court has recognized a constitutional right of intimate association, "the nature and extent of that right is hardly clear." Id. at 42.  The Second Circuit case is the only case I have found that addresses a situation even remotely similar to the facts alleged by Mr. Vigil, and there is certainly no Supreme Court authority, Tenth Circuit authority or weight of authority from other circuits from which a reasonable official would have known that his or her conduct in removing Mr. Vigil from the governing council was a violation of his marital association rights.[4]  Thus, even if I had not concluded that Mr. Vigil has failed to show the violation of his marital association rights, I would conclude that the individual Defendants are entitled to qualified immunity because the contours of the right are not clearly established.

Mr. Vigil also argues that this claim is brought as a political association claim, and the Complaint does allege that Mr. Vigil was removed from the governing council because of his political associations.  "Public employees receive First Amendment protection from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance."  Barker v. City of Del City, 215 F.3d 1134, 1137 (10th Cir. 2000).  In order to survive summary judgment on this claim, Mr. Vigil must "establish a genuine dispute of fact that

---

[4]Plaintiffs cite to Owens v. Rush, 654 F.2d 1370 (10th Cir. 1981) for the proposition that the Tenth Circuit has recognized that a husband who is fired for assisting his wife in bringing a cause of action against the state has a claim for violation of his right of free association. However, Owens was decided on the basis of the right to political association because assisting someone with litigation is protected activity under the First Amendment.  Id. at 1379.  The Owens court did not determine that the state's action in firing the husband unduly burdened the marital relationship.  Thus, Owens is not Tenth Circuit precedent clearly establishing the contours of a marital association right.

(1) political affiliation or beliefs were substantial or motivating factors behind his dismissal; and (2) his employment position did not require political allegiance." Id. at 1138.

In support of his claim, Mr. Vigil presents evidence that he was removed from the governing council because of potential legal implications resulting from his wife's resignation.  In Plaintiffs' Exhibit 12, Defendant Dominguez discusses the need for Mr. Vigil's resignation from the governing council due to the "legal implications and obvious conflict of interest issues involved with the actions Sonya is taking or has let us know she is contemplating . . .."  Plaintiffs also offer, as evidence of Mr. Vigil's political association claim, that Mr. Vigil spoke out about various policy violations.

The heart of a free association claim is an association, and Mr. Vigil's speech, even if on matters of public concern, is not evidence supporting a political association claim.  His evidence that his resignation from the governing council was sought because of the legal implications of his wife's actions is a closer question.  In Owens v. Rush, the Tenth Circuit held that a husband who was assisting his wife in litigation to vindicate her civil rights had a cause of action against the state when he was fired for giving this assistance.  654 F.2d 1370, 1379 (10th Cir. 1981).  In this case, there is no evidence that suggests Mr. Vigil was assisting his wife with litigation when he was removed from the governing council or that his assistance in his wife's actions was a substantial or motivating factor in the decision to remove him from the governing council.  In Copp v. Unified School District No. 501, the Tenth Circuit concluded that an employee had not shown he was assisting another employee in litigation merely because his deposition had been taken and he was a probable witness.  882 F.2d 1547, 1550-51. (10th Cir. 1989).  In this case, Mr. Vigil has not even shown the level of assistance with litigation shown in Copp.  Accordingly,

Mr. Vigil's evidence is not sufficient to establish a genuine dispute of fact that his political affiliations or beliefs were a substantial or motivating factor in the decision to remove his from the council.

Even if Mr. Vigil's evidence were sufficient to raise a triable issue with regard to the first element of a political association claim, Mr. Vigil's presents no evidence to create a genuine dispute with regard to the second element. With regard to the second element, Plaintiffs argue that this element is met because Defendants do not specifically argue that Mr. Vigil occupied a position requiring political allegiance and because the evidence in the record does not suggest that he did. Plaintiffs misapprehend the burdens of each party at summary judgment, particularly when the Defendants have raised qualified immunity as a defense to a claim. Plaintiffs bear the burden of showing an inference of the presence of each element essential to the case. <u>Bausman v Interstate Brands Corp.</u>, 252 F.3d 1111, 1115 (10th cir. 2001). Thus, Plaintiffs cannot defeat Defendants' motion for summary judgment by arguing that evidence does not disprove an element of their claim. Mr. Vigil has presented no evidence showing that his position on the governing council did not require political allegiance. Thus Mr. Vigil has failed to meet his burden of showing a violation of his constitutional right, the individual Defendants are entitled qualified immunity on this claim, and all Defendants are entitled to summary judgment with regard to this claim.

IV.    PLAINTIFFS' CONTRACT CLAIMS

Plaintiffs bring two contract claims against Defendants, and both are brought by Ms. Sonya Vigil alone. In Count II, Ms. Vigil alleges a claim for breach of contract, and in Count III, she alleges a claim for breach of the covenant of good faith and fair dealing. Her claim for breach

of the covenant of good faith and fair dealing is based solely on her alleged termination.

Complaint ¶¶ 85-88.  Her claim for breach of contract is based on her alleged termination, the

alleged failure of Defendants to provide the SVA staff with proper security measures, the alleged

failure of Defendants to pay Ms. Vigil under a short-term disability provision despite her

qualification for payment and her provision of the appropriate medical documentation to prove

her qualification, and the alleged failure of Defendants to review her salary and increase her salary

after one school year.

Defendants argue they are entitled to summary judgment on all bases of Ms. Vigil's

contract claims because (1) she resigned and was not terminated from her employment; (2) she

had no contract right to security measures; (3) she was not entitled to receive paid disability leave

under the 2003-2004 Faculty Handbook, she was not qualified to receive paid disability leave

even under an earlier handbook because she offers no evidence that she provided the requisite

medical certification, and because she was paid during her entire medical leave from January 22,

2004 until she resigned February 15, 2004; and (4) Ms. Vigil had no contract right to an

individualized performance evaluation, no contract right to a salary increase, and her salary was

increased ten percent after her second year of employment.

There is no dispute in this case that Ms. Vigil's employment was governed by an

employment contract which is attached to Defendants' motion as Motion Exhibit A.

A.    Plaintiffs' Contract Claims Based on her Alleged Termination

The Court has already determined that Ms. Vigil resigned her employment and was not

terminated.  Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claim for

breach of the covenant of good faith which was brought solely on the basis of the alleged

termination and on her breach of contract claim to the extent it was brought based on her

termination.

       B.     <u>Plaintiffs' Contract Claims Based on the Alleged Failure of Defendants to Provide Security Measures</u>

     Plaintiffs assert that Defendants expressly contracted with Ms. Vigil and other SVA

employees to provide security at the school.[5]  As evidence of such a contract, Plaintiffs provide

Ms. Vigil's affidavit in which she avers that on October 31, 2004, Defendant Marks and

Defendant Sandoval promised to hire security guards, and instead of hiring a security guard gave

security duties to a janitor with no security experience.  They also provide a memorandum sent by

Defendant Marks and Defendant Sandoval to SVA staff in which they state, "Two structural

changes are in the works.  One is to have a security guard from 3:45-5:15 each day to help us

with the after school parking lot and grounds issues which staff have mentioned.  We hope to

have someone shortly. . .."  Plaintiffs' Exhibit 3.

     Under New Mexico law, a contract is a legally enforceable promise that must be

supported by an offer, acceptance, consideration and mutual assent.  <u>Nance v. L.J. Dolloff</u>

<u>Associates, Inc.</u>, 126 P.3d 1215, 1220 (N.M. App. 2005);  N.M. UJI-Civ. 13-801.  Consideration

for a contract consists of a promise to do something that a party is under no legal obligation to do

or to forbear from doing something he has a legal right to do.  <u>Piano v. Premier Distributing Co.</u>,

107 P.3d 11, 15 (N.M. App. 2005).  A promise must be lawful, definite and possible.  <u>Id.</u>

However, a promise that is illusory is not consideration and will not support a contract.  <u>Id.</u>

_____

     [5]Plaintiffs affirmatively deny that they are relying on any implied contract.  Plaintiffs'
Response p. 8.

The memorandum sent by Defendant Marks and Defendant Sandoval in which they state they are in hopes of having someone to provide security shortly is not sufficiently definite to have amounted to a legally enforceable promise. Even if the Court were to look for an implied contract within the memorandum, in spite of Plaintiffs' contention that the memorandum is an express contract, the Court could not imply a contract because the alleged promise is not sufficiently explicit, definite or specific to give rise to any reasonable expectations on the part of Ms. Vigil. See Garrity v. Overland Sheepskin Co., 917 P.2d 1382, 1386 (N.M. 1996).  Additionally, the language of the memorandum that the changes were "in the works" and that Defendants "hope to have someone shortly" is nonpromissory and does not constitute either an express or implied contract.  See Sanchez v. The New Mexican, 738 P.2d 1321, 1324 (N.M. 1987).

Even assuming Defendants did make an enforceable promise to provide security, Ms. Vigil does not allege that Defendants utterly failed to provide any security.  Instead, she alleges that the security that was provided was inadequate because the janitor to whom security duties were assigned had no security experience.  There is absolutely nothing in the memorandum supporting Plaintiffs' assertion that the memorandum creates an express or implied contract to provide experienced security.  Accordingly, Defendants are entitled to summary judgment on Ms. Vigil's contract claims to the extent these claims allege that Defendants' breached a contract by failing to provide security.

C.    Plaintiffs' Contract Claims Based on the Alleged Failure of Defendants to Pay
        Short-Term Disability Leave

Defendants argue that Ms. Vigil was not entitled to paid short-term disability leave.  They note that her employment contract for the 2003-2004 provides only for sick and personal leave

"in accordance with the South Valley Academy Faculty Handbook."  Defendants. Motion Exhibit A ¶¶ 6,7.  They further note that the 2003-2004 Faculty Handbook makes no provision for paid disability leave other than the personal and sick leave mentioned in the employment contract, and the only other available leave is unpaid leave.  Ms. Vigil contends that she was entitled to paid short-term disability leave and provides a copy of the 2001-2002 Faculty Handbook which does provide for paid leave for up to six months when a serious health condition results in an employee's inability to work and the condition is certified by a licensed physician.  Plaintiffs' Exhibit 2.

The employment contract cross-references and incorporates provisions of the "South Valley Academy Faculty Handbook," but does not specify the version of the handbook being incorporated.  Thus, if an employee received an earlier version but did not receive the later version, the terms of the contract might be in dispute.

Ms. Vigil avers that she never received the 2003-2004 handbook.  Technically, she also avers that she never received the 2001-2002 handbook since it is entitled a "Faculty Handbook." Her affidavit testimony is clear that she never received a "Faculty Handbook" because no such separate policy manual for faculty existed, and the only policy manual provided to her was a "Student and Faculty Handbook."  Plaintiffs' Exhibit 1 ¶ 36.  Thus, in a strict sense, Ms. Vigil has not shown evidence that would place the terms of the employment contract with regard to sick and personal leave in dispute.

Even assuming that Plaintiffs' overall proffer of evidence could suggest that Ms. Vigil did receive the 2001-2002 Faculty Handbook since she offered this handbook as an exhibit, she has failed to show a disputed issue of material fact that she was entitled to such leave.  The handbook

requires an employee to provide certification of medical necessity by a licensed physician.  Ms. Vigil has provided no evidence that she obtained such certification or that she provided such certification to SVA.

Moreover, Ms. Vigil has failed to show that she did not receive paid leave.  It is undisputed that Ms. Vigil stopped working in January 2004 and that she was paid through February 15, 2004.  The Court has concluded that Ms. Vigil resigned her employment in February 2004.  Thus, she was never on unpaid leave and has no claim for breach of contract based on Defendants' failure to pay her during her leave.  Accordingly, Defendants are entitled to summary judgment on Plaintiffs' contract claims to the extent they are brought based on an allegation that Defendants failed to pay Ms. Vigil for short-term disability leave.

D.      Plaintiffs' Contract Claims Based on the Alleged Failure of Defendants to Review Ms. Vigil's Salary

Ms. Vigil's employment contract for the 2003-2004 school year provides that:

8.      Salary.  Subject to the availability of funds, the School shall pay Employee, as full compensation for services rendered to the School and SVA, a salary of $33,000 . . ..

9.      Annual Salary Increases.  The School may, but shall not be required to, increase prospectively the salary for any school year governed by the terms of this contract if additional revenues are made available to the School for that school year as a result of unit value increases.  Any increase is subject to budgetary approval by the School and the State Department of Public Education.

Defendants' Motion Exhibit A.

Ms. Vigil's employment contract for the 2001-2002 school year provided that:

. . . the Employee's salary is $30,000 . . .
                                        . . .
The Governance Council may, but shall not re required to, increase prospectively, but not retroactively, the salary for any school year governed by the terms of this

27

contract if revenues are available to the South Valley Charter High School for that year.  Any increase is subject to budgetary approval by the Governance Council.

Defendants' Reply Exhibit B ¶ 8.1.3.

Ms. Vigil contends that her employment contract required Defendants to provide her with annual evaluations.  This claim is somewhat baffling because Plaintiffs refer to "salary review" interchangeably with "annual review" and discuss these as if they are individualized performance reviews for merit salary increases.  See Response pp. 11-12.  Plaintiffs' allegations and argument infer that Plaintiffs believe Ms. Vigil was entitled to a personalized performance evaluation.[6]

The employment contracts make no mention of any type of performance evaluation or individualized annual salary review.  They each state merely that an employee's salary may be increased subject to an availability of funds and budgetary approval.  The contracts make explicit that any salary increase is permissive on the part of SVA, and SVA is not required to increase an employee's salary.  Thus, nothing in the written employment agreements gave rise to an obligation to give Ms. Vigil an individualized annual salary or performance evaluation.

Ms. Vigil testified in her affidavit that Defendant Marks promised to review her salary at the end of her first year of employment and give her an increase at the end of the year.[7]  Plaintiffs'

---

[6]In her affidavit, Ms. Vigil avers that her "performance was never reviewed annually." Plaintiffs' Exhibit 1 ¶ 4.  This statement seems to confirm that Plaintiffs perceive a "salary review" as synonymous with a performance evaluation.

[7]Plaintiffs' Complaint does not allege a contract claim based on Defendants' failure to give Ms. Vigil a raise in spite of her affidavit testimony that she was promised a raise and was not given one.  See Complaint ¶ 73-88; Plaintiffs' Exhibit 1 ¶ 4.  In her affidavit, Ms. Vigil seems to make much of inconsistencies in Defendant Marks' stated reasons for not giving her a raise at the end of her first year of employment.  Plaintiffs' Exhibit 1 ¶ 4.  These alleged inconsistencies are not relevant or material to whether Defendants had a contractual obligation to evaluate Ms. Vigil's salary or give her a raise.  In any event, Ms. Vigil's salary increased from $30,000 in 2001 to $33,000 in 2003.

28

Exhibit 1 ¶ 4.  She also declared that she relied on this promise as part of the reason she accepted the job at SVA.  Plaintiffs' Exhibit 1 ¶ 5.  However, "Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract," N.M. Stat. Ann. 1978 § 37-1-23.  Thus, even if Defendant Marks made verbal promises, Ms. Vigil may not bring a contract action based on those verbal promises, and Defendants are entitled to summary judgment on Plaintiffs' contract claim to the extent it is brought based on an alleged contractual obligation to give her annual salary evaluations.

      E.     <u>Other Possible Bases for Contract Claims</u>

Plaintiffs only allege the four above grounds for Ms. Vigil's contract claims in their Complaint.  However, in Ms. Vigil's affidavit, she alleges that she was promised an opportunity to attend classes while employed at SVA, and that she relied on this promise in deciding to accept employment at SVA.  Plaintiffs' Exhibit 1 ¶ 6.  Defendants' alleged refusal to allow Ms. Vigil to attend classes is only alelged as a basis for Ms. Vigil's equal protection claim.  However, in the event Ms. Vigil worded her affidavit in this manner in an attempt to add this as a basis for her contract claims, the Court notes that there are no written provisions in Ms. Vigil's employment contract that discuss an opportunity to attend classes, and Plaintiffs provide no evidence of any written provision in any handbook that would give rise to an implied contract to allow employees to attend classes.  To the extent Plaintiffs contend that a promise was made verbally, the Court again notes that, under New Mexico law, a governmental entity is immune from actions based on contracts that are not written contracts.  N.M. Stat. Ann. 1978 § 37-1-23.  Thus, any failure of Defendants to allow Ms. Vigil to attend classes cannot give rise to a contract claim.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment on Plaintiffs' Constitutional Claims, on Plaintiffs' Contract Claims, and for Qualified Immunity (Doc. 14) is hereby GRANTED and Plaintiffs' Contract and Constitutional claims in Counts II, III, IV, V, VI and VII are hereby DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE